Case 24-5538, Be the Bush Recovery Ministries v. Coffee County TN Argument not to exceed 15 minutes per side. Ms. Southerland, you may proceed for the appellant. Your Honors, I would like to reserve three minutes for rebuttal. Great. May it please the Court, my name is Abigail Southerland. I represent the plaintiff appellant in this case, Be the Bush Recovery Ministries, in the appeal of the District Court's orders. Unless the Court has questions regarding the supplemental briefing that the parties recently submitted, I'd like to move on to two of the particular issues presented on appeal. As Your Honors know, this case involves numerous issues, can be quite complicated, and involves numerous claims, the Fair Housing Act, the Americans with Disabilities Act, RLUPA, and the Equal Protection Claim. I'm going to focus on two with the brief time that we have. Just to cut you off and ask a procedural question, which is the relief you seek. So I assume you are seeking damages for the failure to obtain the specific location that you tried. That is correct. But I would think an injunction tied to that specific location would now be moved. But are you also seeking some type of broader injunctive relief against the county, and what would that be? We are, Your Honor. So we're seeking a declaration of violation of federal law, but also a permanent injunction with regards to the discriminatory ordinance. As the record demonstrates very clearly, while Be the Bush has had to move out of the county to find another property, the desire and the intent is for the ministry to return to Coffey County. I clearly think you have standing with respect to any relief that was associated with the specific location, which I understand was in Zone R1. So what I'm hung up on is I do think that almost your better argument might be with respect to the R2 zone, but I don't understand why you would have standing to seek an injunction against any potential discrimination between R2 and C2 and the two types of special areas. And it seems to me you have to do more than suggest that we might move back one day. I would think that standing requires an eminence element that suggests that you have at least maybe potentially identified a property in the R2 area. And if you think I'm wrong, why do you think that? Your Honor, I think respectfully, I think that what the case law requires is a threat. You can demonstrate the injury in fact of standing through threatened enforcement of a zoning ordinance. I think the facts demonstrate more than a threat. As we've indicated in the record, there was a decision, they prevented Be the Bush from actually rezoning the property from RS1 to R2. The city of Tullahoma informed Be the Bush that the county had said, nope, you can't rezone it to R2. And then in district court filings, the county defended that position and specifically affirmed that that was their decision with regards to their application of the ordinance in the way that it's written. So we have threatened and actual injury in that it has been applied to Be the Bush. And because the ordinance is in place until this court remedies the facial discrimination, the ordinance continues to apply to Be the Bush. So for the county to argue that Be the Bush should engage in a fruitless search and a fruitless effort for additional properties, engage with property owners to purchase the property, knowing that it's not permitted under a determination, under the actual face of the ordinance itself, is somewhat of an unfair request or task of Be the Bush. I would agree with you that you shouldn't have to do what you did in this case, which is get into a contract. But I do think there is some analogy to Lujan, which is this famous standing case where the theory was, we may someday go overseas to look at exotic animals. And the court said that that was not enough because someday intentions are insufficient and maybe you need to show a little bit more plan. So I could see the argument at least being you have to at least identify some areas or some properties that you are particularly interested in. Well, even identifying a property, and I think that's part of the harm that we've articulated, is it's difficult to even find a property. Obviously under the facially discriminatory ordinance, we're in a position where we must look for a property in C-2. There is no other property that's available to Be the Bush. So we could engage in a fruitless effort. I would agree that to show standing you just need to look in R-2 and then identify a property that's perfect for us. But it's zoned R-2. We can't under the, as you call it, facially discriminatory ordinance. We can't buy it because we wouldn't be able to use it, and that might be enough. But I don't want to distract you too much from the substantive merits, but that was one issue I flagged. I think your Honor's question reminds me of the Prime Media v. Brentwood case within the Sixth Circuit in 2007. And in that case this court held that a plaintiff bringing a suit to challenge a signed ordinance could demonstrate injury if it had been threatened with rejection or regulation under the challenged ordinance provisions or, quote, even if the plaintiff had articulated some plans that it developed to erect a sign but was discouraged from doing so. And I think that we've met that fully here, that standard. I want to focus really quickly on the part of the district court's erroneous decision-making with regards to the facial discrimination claim. As you all know, the court's analysis focused on just the R-S-1 zone. Obviously we're contending that the way the ordinance is written, it doesn't just exclude them from the R-S-1 zone, it also excludes them from the R-2 zone. And I think we've demonstrated the intent, the proper intent of the county to apply it in that manner rather than just applying it to be the bush in the R-S-1 zone. The intent is reflected by the letter from the lawyer? So it's on three separate occasions, actually. There's an email from the city explaining that this is the county's determination and you need to reach out to the county to address it. The county attorney's letter is the second incident where we then follow up with the county and ask for an official determination and the county attorney issues that letter. In that letter, Mayor Cordell and Kurt Gray, the zoning administrator, are both copied on that letter. At no time during the litigation has the county attempted to reverse course or indicate that that is actually not their interpretation of the ordinance. However... You never saw it. There were more steps you could have taken that you didn't take. Well, Your Honor... That's right, right? I mean, I'm not saying you're wrong, but couldn't you have formally gone to the council or the commission and asked for some relief? The letter from the city attorney or the outside lawyer ceasing other people, that's not a... You're arguing it's a formal determination. That's a misunderstanding. You're arguing that's sort of a formal determination. At that point, the city had spoken and the response would be, well, there were other steps you could have taken. You could have applied for different types of relief. I think, Your Honor, because... You didn't do that, right? We didn't seek further zoning confirmation from Kurt Gray, the zoning administrator, because he had issued that determination and then we asked the county attorney, what is the county's official position? And because we had already been through the circus and the hoops of proposing a text amendment for the RS-1 zone, it was very clear the county did not want to send any residential zones. I think that would have, again, been a fruitless effort. The vote the first time was 11-7, right? The first time you applied in the RS-1 zone? In the RS-1 zone. It wasn't, to me, it doesn't seem like it was impossible that you could have swayed them the other way. I think the case law is clear, is that we don't have to continue to move through. If we've received an initial determination, we're not required to exhaust the administrative process. On the first step, you went the whole way. You went this far and you decided that was an official determination and you obviously knew there were further steps you could take because you took them in the first round. Your Honor, I think requiring plaintiffs to engage in yet another zoning application process in the process of losing the property, because that was at stake at the time this was all taking place. I think if there was any doubt in anyone's mind, and again, threatened injury is sufficient, but if there was any doubt in anyone's mind in the litigation of this case after we filed suit, the county follows up with an affidavit of the zoning administrator filed in this case and he says, it's docket 30-3, page ID 281, and he says, based on the facts and circumstances present in the county's good faith interpretation and application of its zoning laws, Be the Bush's proposed use best meets the definition of special institutional care facility. So I don't think there's any doubt at this point that that is their determination, that's how they apply it, and again, I think it would have been futile for us to continue to fight with the county about it rather than going ahead and filing suit, especially given the circumstances at the time. I do want to... Just turning to the merits, so I recognize that you do have this argument about facial discrimination in R2 versus the commercial C2, I guess it is, and I'm just trying to figure out what the test should be for determining what is discrimination, and I was looking at the text of the Fair Housing Act and it says, to otherwise make unavailable or deny a dwelling because of a handicapped. So the Supreme Court has lots of cases that suggest because of is a test of causation, including but for causation. So do you think the right way to think about it is, but for your handicapped, would you have been able to obtain the home you are seeking? And I'm not certain that would be the case because I don't think you would fall within the areas in R2 if we say, but for your handicap, which here is addiction. If we say, if you were not addicted, would you be able to be in the R2 areas? It's not obvious to me because I don't think a group home for people who don't have a disability whatsoever would fit within that. That's for nursing homes and other things. So it's not obvious to me you would satisfy that test, but I do agree with you that it does mention addicted on the face of the statute, but I'm trying to figure out what the test should be. Well, and actually it mentions it not just one time in the definition of special institutional care facility. It actually includes that exclusionary language again in the special personal and group care facilities definition where it identifies numerous group home settings, not all of which are for disabled individuals. And it clarifies that in the definition itself, A, B, C, D, E, where it goes through each one. But in any of the group care home definitions that would appropriately define a home for disabled individuals such as Be the Bush, it does then specifically include the exclusionary language. This grouping does not include facilities, providing residential services to delinquent minors, the criminally dangerous, and the addicted, or the mentally ill individuals. Do you think you would have, if you did the but-for analogy, so assume you weren't addicted, do you think you would satisfy any of those provisions to fall within R2? I think that yes, potentially yes. And I think the other thing that stands out here is when you look at the uses that are permitted in the RS1 and the R2 zones, it's every single conceivable residential use that is allowed under the ordinance. Every single one, except for individuals addicted to drugs and alcohol or those that are considered criminally dangerous. And Commissioner Hunt testified on the record, we have been presented with no evidence that these individuals would pose any danger to society. So that knocks out the contingency that they are criminally dangerous and properly are excluded from all residential zones. But when you look at the uses in the RS1, even the RS1 zone, you have overnight campgrounds, travel trailer parks, religious organizations operating all kinds of high-density overnight residential uses, such as retreats without any occupancy limit, camps and monasteries and convents. And then you have duplexes. But you also have non-residential, non-single-family uses that are also permitted. Recreational facilities, indoor and outdoor commercial entertainment. That would be a concert, aquariums, private clubs and lodges and retreats. And then you look at the R2 zone. You have every group home identified under the definition. And then you also have private clubs and lodges, nursing homes, hospitals. The point is that all of these uses represent a wide array of occupancy limits, licensure, not licensed, traffic and parking issues, size, whether they're more like a group home family setting or an institutional setting. But the point is they are all permitted in at least one of the residential zones. So the but for... That's a little bit off topic. This as-applied challenge, how does that go under the radar here? Obviously, the argument or the district court found it is waived or abandoned. What happened with that claim? Yes, Your Honor. So what happened with that claim is the plaintiff, we never sought summary judgment on that claim. The fact analysis and the legal test that applies is very specific. And essentially, you must demonstrate discriminatory intent. And so we just determined from the outset that that involved too detailed of an analysis for a summary judgment. So we did not raise the argument on summary judgment. Defendant did not seek summary judgment on that claim. And the district court never ruled on that claim at all. What happened at the pre-trial? And I know we don't have the transcript, but what happened at the pre-trial conference, the discussion about that? So we submitted on paper the claims that we thought should still be presented for trial. And as I recall, and this was over a year ago, we just reiterated what the parties had put in the pre-trial briefing or the pre-trial order, which is these are the claims that we believe are ready to go to trial. I cannot remember really much, if any, reasoning that the district court provided. It was more or less he allowed the parties to speak on the issue, and that was all. And what I do recall, and I see my time is up, so I'll answer this question and then I'll go ahead and sit down, but what I do recall is that the argument that we presented is obviously nobody sought summary judgment on this claim and the district court didn't rule on the claim. So it is a live claim. It was clearly asserted in our complaint as a separate claim. We clearly identified it. We also reminded the county that this claim was still a live claim in a private letter to counsel in the middle of litigation. And then I believe the county's response... Was that before or after summary judgment? It was before summary judgment. It was actually in a settlement letter, and so we blacked out. Well, we submitted the letter to the court, and we blacked out a lot of the content that contained settlement negotiations, but still demonstrated that we had indicated that it was a claim that we intended to pursue because punitive damage is attached to that claim. And so we were just putting the county on notice. Do you think you had an obligation? As I understand the county's, their motion for summary judgment, they clearly indicated a request of summary judgment for all claims. Now, I recognize they had no reasoning on this as-applied challenge, but why wouldn't that be enough to put you on notice that you should flag in your response to their summary judgment motion that, hey, you didn't even mention this claim that is still live, so you obviously can't grant the county summary judgment? Well, and I think we actually mentioned in our opening brief before this court that we did include a heading that indicated that plaintiff had sought... that plaintiff is seeking... or had brought claims under both. So there's a heading in our response brief to the county's motion for summary judgment that indicates that plaintiff has actually brought two claims, the facial and the as-applied. So we did actually flag this and notify both the court and the parties. And again, how can a claim be waived when not even the court has issued a determination on that claim? Thank you, Your Honors. All right, thank you. You'll get rebuttal. May it please the court, I'm Jeff Thompson of the Knoxville, Tennessee, Bar here today representing the appellant of Coffey County, Tennessee. This is a somewhat unusual case on appeal wherein the plaintiff has sought and received a jury trial on a Fair Housing Act and Americans with Disability Act reasonable accommodation claim. And after a three-day jury trial, the jury returned a verdict for the defendant. The plaintiff appellant in this case is not seeking review of the jury's verdict which is somewhat unusual, but in fact is seeking an appeal on some various pretrial rulings of the court. Well, some are summary judgment, that's not... Yes, Your Honor. You lose a jury trial, that can be hard to appeal. The summary judgment, usually the standard is a little more favorable to you. So I don't know that's that unusual. Yes, Your Honor. But I would consider the other claims related to the claim that was tried. But nevertheless, Coffey County, Tennessee does have a zoning ordinance that is designed to promote the public health, safety of its citizens and to protect and enhance its residential areas. And of course, the lowest density district in Coffey County is the RS1 Low Density Residential District. That district is designed to provide suitable areas for residential developments consisting of single-family dwellings and other structures that are accessory thereto within areas that are suburban in nature. The only actual permitted residential use in an RS1 district is for a single-family dwelling. Yeah, but they're... I mean, they're challenging the distinction between the... Is it RS2 or R2 or whatever? R2 and C2. And it does seem to be, at least on the face of the zoning ordinance, a distinction between homes for the addicted and other group homes. Why wouldn't we think that that, on the express language of the zoning ordinance, is discrimination? Well, Your Honor, as Your Honor touched upon in the appellant's argument, first of all, there was never any... There's not any standing to seek review of the RS2 claim because plaintiffs never pursued any property whatsoever in the RS2 zone. There was never any final determination. There was never any property that was interested. There was never anything taken to the Board of Zoning Appeals. There was never anything taken to the county commission. There was never any... So is it just a matter of time then until your zoning ordinance gets struck down? Do you have to wait for another plaintiff? So assume standing. Well... Why would there not be a Fair Housing Act violation? Assuming standing, Your Honor, as a whole, there is no exclusion of addicted or disabled persons within either the RS1 or the RS2 district. Addicted persons can live and be housed in either RS1 or RS2 just as anyone else can within the zoning procedure. They just can't do it in a 40-person or more residential... Why wouldn't we think that would be discrimination if you had... You can't have a 40- or more-person home if you are not addicted. But you can't if you are addicted. That still strikes me as discrimination. I don't think the response there would be, oh, you can have a single-person addicted home. Well, Your Honor, the home situation that the plaintiff refers to in the RS2 zone, I would point out states that both of those instances that are discussed are licensed facilities which do not include the plaintiff, in this case, Be The Bush. So there is a licensure requirement within both of those group home types of situations. So that licensure requirement would actually exclude Be The Bush from those two things that plaintiff wishes to discuss. But it would be the licensing requirement and not the disability or the addiction under those two things. I didn't quite follow. So there's a state licensing requirement or a local licensing requirement? It doesn't say in the ordinance whether it's a state licensing requirement, but it just says a licensed facility. So those two, the group care facility and the family care facility, which I believe is what plaintiff is referring to, both of those are required to be licensed. It doesn't say state license, local license, but I assume it's some sort of license, which Be The Bush admits that it does not have. So that's a differentiating. It is different, but in some ways it makes it harder. Those entities have to be licensed. Be The Bush does not, I guess, is your point, I think. Well, Be The Bush could not fit within that category is what I'm saying because it's not a licensed facility. A licensed? Correct, Your Honor. And I think what Judge Murphy is asking is the problem with the language that one says about one of the under special care facilities that talks about residential services to addicted or mentally ill individuals. And what I'm saying is Be The Bush doesn't fall under that anyway because it's under that provision because it's not a licensed facility. But I would state that Be The Bush, well, any handicapped individuals or any disabled individuals can live throughout RS1 or RS2 within the confines of any of the other things that are allowed. They can live in the duplex dwellings, single family dwellings, manufactured home parks, any of those things that contemplate a low density or a higher density residential dwelling. As a whole, there's simply not an exclusion of addicted persons within either of those zones. And the district court actually reviewed the resolution as a whole. And, of course, the resolution is, I forget, but I think it's 100 and something pages and we're very focused on minute parts of the zoning ordinance. But the district court basically reviewed the RS1 zone, the C2 zone, and found that as a whole the zoning did not discriminate against the disabled. So what if it was just a large group home, not for the addicted? So it was just normal people who wanted to live together. Would they be able to fit in an RS2? Your Honor, I'm not sure what your definition of large is. If it fits within a single family dwelling or a duplex, I don't think no addicted person has to come to us and ask, or there's no zoning requirement. So it would be like, so what is, I forget the capacity of Be the Bush. Was it 30 or 40 people? Well, Your Honor, that seemed to be a moving target in the first hearing before the county commission. I think it was 30, and in the second one it was 40-plus. So if it was 30 non-addicted people, and they wanted to live in a facility like the facility they were looking for, but it was in R2, would there be any prohibition on them living there? I would say that there would be, because unless 30 people could fit themselves within a single family dwelling or a duplex or a manufactured home park or one of the things that's enumerated within the RS2, an apartment, I think that's one of the things. What if it was a license, some kind of facility that required a license? That seemed to be your distinguishing feature earlier. So if this building required a license of some kind, then it would be okay? If the building required a license? I didn't quite understand your licensure argument earlier. If this facility that Judge Murphy just designed also required licensure of some kind? If it was licensed, I believe that it would fall within one of the categories that we were discussing earlier with regard to the special institutional care facility. And why is the licensure, why is that? Well, I think Judge Murphy was interested in the language. Judge Murphy is very bright. I'm with you. Well, I think he was interested in the language. There is specific language in the RS2 with regard to group care facilities. And I was drawing, and so there is a specific language about it dictated within that particular provision of the zoning resolution. So I was simply pointing out that under that simple definition of special group care facility, then Be The Bush would not qualify to go within that particular. I understand. But there are a lot of facilities in this category that are more dense than a dual duplex. That's correct, Your Honor. But that one specifically mentioned it. Can you speak more broadly then? Because there are a lot of categories here where there are denser occupancy rates. I don't think they're all licensed. Maybe some of them are licensed. And you are foreclosing an arguably comparable entity that both has faith basis and has residents who are disabled. Well, Your Honor, I would also point out that one of the cases that we talked about was the get back up case where a substance abuse treatment center was denied a permit to operate within the city's business zone. And in that case, the substance abuse center was trying to compare itself to some other things like hospitals and nursing homes. And the court in the get back up case found that the get back up facilities were materially different from both hospitals and nursing homes because it was a proposed residential use, which differed from either a hospital or a nursing home. Because in a hospital, people are staying there for long periods of time. And in a nursing home, the people are needing to be physically attended to, neither of which are the situation that we have here in this case. So I would consider the get back up case to be very instructive on that point. And there are daycare facilities on here. There are family care facilities. There's quite a range of… Well, a daycare facility doesn't contemplate an overnight residential stay. I know plaintiff's counsel mentioned earlier RV parks and retreats and things like that. And again, those do not contemplate long-term living type arrangements like we have in the situation of Be the Bush. Nursing homes do, right, to some degree? Well, also a nursing home is different, though, because it requires constant physical assistance, which is what the get back up case said from the Sixth Circuit. That's different because it's a constant requirement of physical assistance, whereas the Be the Bush facility, the residents are completely able to care for themselves. They eat their own meals. They bathe themselves. They go out and work. I mean, it's a different contemplated use. So there is some analogies I draw from. There was a lot of litigation out of COVID and COVID shutdowns, and churches were compared to theaters versus casinos. And what seemed to come out of that precedent was kind of a most favored nation provision for religion. So you could arguably say when you have these competing groups and you put a home for the disabled in one of the groups, the Fair Housing Act, this provision of the Fair Housing Act, is designed to give them most favored nation status. So you have to treat them like you would the best group. And it seems to me you could make that analogy here and say they're just like nursing homes. I don't understand why the fact that a nursing home has constant care should make them not like nursing homes for purposes of this type of inquiry. I do see a similarity between those two contexts. Your Honor, I'm not as familiar with the COVID cases, but I would state that I don't think that disabled under the Fair Housing Act are given most favored nation status. I think under the FHA and ADA, the disabled basically has to be put on a level playing field, not to be given favored status, but to be given the same status as everyone else. And I think as Judge Riedler pointed out, if 40 people wanted to get together in a big home and all live together, I don't think that's contemplated in the RS1 or the RS2 zone. If those people wanted to disperse within a duplex or an apartment complex or a manufactured home unit, I mean, that would be fine, but I don't think anything in the RS1 or the RS2 category. There's nothing within either of those categories that contemplates that type of usage for either disabled or non-disabled persons. I see my time is up, and unless the court has other questions, we'd respectfully ask that the panel affirm the opinion of Judge Collier. Thank you very much. Thank you. Thank you. I want to just touch on a few points made by the county. The licensure issue is not a neutral distinction. And I think as one of you may have mentioned, why does licensure matter? It doesn't. And the county has never demonstrated why a licensed facility operating without any occupancy limit can do so in the R2 zone, as long as it's not for addicted individuals. The get back up case that the county mentioned is very different from this case because the court didn't find that the nursing home and the group homes were dissimilar in their use. They found that there was a good reason to keep group homes out of a business district, whereas there was a good reason for a nursing home to be located in a business district. The facts are opposite here. We are a residential group home, and we are seeking access to a residential zoning district. I want to focus really quickly on the rational basis, because I know that the county opened with asserting general interest of the safety and public health of citizens. We have presented to this court the testimony of one of the county's own officials, Commissioner Hunt. He has served on the planning board, the county commission board, and the board of zoning appeals for many, many years, probably one of the most knowledgeable county officials with regards to zoning matters. He has testified that there is no impact on land use and zoning, no difference as it relates to zoning issues between Be the Bush and the religious organizations that are permitted in the RS1 zone. He has also testified separately and distinctly that there is no difference between Be the Bush and all of the group homes that are permitted in the R2 zone. So you have a county official expressly admitting this is not a neutral distinction. There is no rational basis for treating the two differently. I can't think of a single impact on land and zoning use that is different between all of these issues. Is it a class of one claim or is it a disability? It is a class of one, yes, your honor. I don't think the equal protection claim identifies addicted individuals as a protected class under the equal protection clause. The whole purpose of the Fair Housing Act and the ADA and the reason it was amended to include addicted individuals was to address a stereotype that was very common and yet unfair. That stereotype was that addicted individuals are dangerous and we should keep them out of our neighborhoods. That language is repeated throughout Sixth Circuit case law, throughout case law, throughout all of the circuits. I think what is so appalling about the county's ordinance here and what demonstrates the facial discrimination is we are not just excluded from all residential zoning districts. We are then looped in with a small category of people and defined as criminally dangerous. Only addicted individuals are identified in the same definition as prisoners and people who must be confined because they pose a danger to society. I think it is a perfect example of the stereotype and what the FHA was enacted to address. Your honors, I see I'm out of time. Thank you very much. One last question. Maybe it goes back to something Judge Murphy asked you earlier, but you've resettled or you have a new establishment in a different county. Do you have plans to try and come back to Coffee County? It sounds like there's no specific property in mind that you're thinking about acquiring, but what's the current status of the operation? The current status is they were required to find a property within approximately 30 days of receiving notice that they had to move. The property they've located is not ideal. It's outside the county. The churches that they attend are in Coffee County. Most of their donors and funders are in Coffee County. The testimony is that they would very much like to return to Coffee County. While they're making the best of the circumstances that they have now, and while they had to scramble and find a property very quickly for all of the residents to ensure that they weren't left homeless or that their recovery wasn't interrupted, the testimony by two, one is a board member for Be The Bush, the other is the founder, both have affirmed and confirmed that they want to return to Coffee County. Then there's obviously also in the record evidence that they purchased a property. It's on a floodplain. Now they're paying flood insurance. There's all kinds of issues with the current property. They're not thrilled with it, and they would like to repeat it. They could find a new property back in Coffee County. Maybe you'd have to, if you didn't win this case, you may have to recreate this process, but that's still open to you, I suppose, if you do find a property. They certainly want to, yes, Your Honor. Maybe the county treats it differently this time around. I don't know. Because it's taken so long, this process has been so long for Be The Bush, I'm not sure. They've been so discouraged to come back to the county and try again because if they find another property, they're going to lose it in the meantime over fighting over this issue. So again, it would be, I guess, a futile effort. Well, they have good lawyers, so they have that going for them. So thank you to both of you for your arguments. The case will be submitted.